# CHARLESTON

## MANKIN *v.* JONES.

Submitted September 11, 1907.    Decided January 21, 1908.

1. PLEADING—*Plea in Abatement..*
    Where the declaration shows jurisdiction, no exception for want of jurisdiction can be taken except by plea in abatement. (p. 375.)

2. ASSUMPSIT—*Pleading and Profit—Variance.*
    A declaration in *assumpsit* states that the contract was made in Raleigh county, whereas the proof shows that it was made in Fayette county. This variance will not dismiss the case, the place not being material. (p. 376.)

3. FRAUDS, STATUTE OF—*Promise to Pay Debt of Another.*
    One is not bound by a mere promise to pay the debt of another; unless the promise be in writing signed by the promising party. (p. 376.)

4. SAME.
    If the person whose debt a third person makes an oral promise to pay, remains still liable, such promise is not binding on such third person. (p. 376.)

5. SAME.
    Collateral oral promise by one to pay another's debt is not binding where no benefit accrues to the person making such promise. (p. 378.)

6. USELESS MATTER.
    Stenographer's notes useless matter. (p. 380.)

Error to Circuit Court, Raleigh County.

Action by Crockett Mankin against George W. Jones, Judgment for plaintiff, and defendant brings error.

*Reversed.*

McGINNIS & HATCHER, for plaintiff in error.

MATHENY & BROWN, J. L. BUMGARDNER, and ASHTON FILE, for defendant in error.

BRANNON, JUDGE:

Crockett Mankin sold to A. P. Gibson some land for which Gibson was to pay Mankin cash on delivery of deed. Mankin met Gibson, and they ascertained the amount of money to be paid by Gibson to Mankin for the land to be about $8,000. Gibson did not have enough money to discharge the purchase money to Mankin by $4,000. Gibson sent for George W. Jones expecting that Jones would furnish the $4,000. Jones came and met Mankin and Gibson, and the matter was stated to him, and Jones promised verbally to pay Mankin for Gibson that amount. Jones did not have his check book present, but he assumed to pay Mankin, and then Mankin said that it made no difference about the money, and if Jones would convey to him a tract of land called the Trump Land at $4,225 that would do instead of money. To this Jones assented, and it was agreed that Jones would pay for Gibson by the conveyance to Mankin of the Trump Land $4,225. It seems that Mankin and Jones had before that been negotiating for this Trump Land. So, Jones agreed to pay Mankin, in this Trump Land, $4,225, and Mankin credited Gibson with that sum on the $8,000 which Gibson was to pay Mankin for the land sold by Mankin to Gibson, and Gibson paid Mankin the said $8,000, less said $4,225, and Mankin delivered to Gibson the deed for the land sold by Mankin to Gibson. Jones gave Mankin directions to prepare a deed from Jones and wife to Mankin for the Trump Land, with the understanding that he would execute the deed. Mankin later sent Jones such deed for execution; but Jones delivered it to a third party in escrow to be delivered to Mankin only on condition that Mankin guaranteed payment to Jones of the $4,225 for the land, in case Gibson should not pay Jones. Mankin refused to make such guaranty and the deed was

never delivered to him. Some dealing had been going on between Gibson and Jones by which it was expected that through Gibson certain other land would be acquired by Jones, and in such event Gibson would become indebted to Jones in $4,800. It does not appear that this expectation was realized. It is clear that no actual debt was to exist in favor of Gibson against Jones, unless Jones should get the land, which it was expected he might get through Gibson's agency. Mankin brought an action of *assumpsit* against Jones in the circuit court of Raleigh county and obtained verdict and judgment against him, and Jones has appealed the case to this Court.

It developed in evidence that Jones resided in Fayette county and the contract was made in Fayette county. Jones moved to dismiss the action for want of jurisdiction in Raleigh county. It does not appear to what county the summons went, so as to raise the question whether it was void because issued in Raleigh county against a single defendant and sent to and served in Fayette county, under principles stated this term in case of *Netter-Oppenheimer & Co.* v. *Elfant*, based on *Warren* v. *Sanders*, 27 Grat. p. 265. The question is, whether when both the defendants resides in one county and the contract was made in that county, a law action in another county is without jurisdiction. Clearly it would be; but the declaration does not disclose where the defendant resided. Though we may say that it states the cause of action as arising in Raleigh county, yet it does not state where Jones resides and thus does not defeat jurisdiction in Raleigh on its face. It contains only the common counts, and shows on its face proper matter for jurisdiction, and therefore chapter 125, section 16 of the Code, applies. It says, "Where the declaration or bill shows on its face proper matter for the jurisdiction of the court, no exception for the want of such jurisdiction .shall be allowed, unless it be taken by plea in abatement." *Snyder* v. *Philadelphia Co.*, 54 W. Va. 149. No plea in abatement was filed. The jurisdiction was thus questioned for the first time after the trial before the jury had begun.

Again, the point is made that the court should have dismissed the case on the motion of the defendant for variance between declaration and evidence. The declaration avers that the

promise was made in Raleigh county, whilst the evidence shows that it was made in Fayette county. Clearly there is nothing in this point. An action on such a promise is transitory. No matter where the promise is made, you can sue in the county where the defendant resides. The Code, chapter 125, section 32, says that "It shall not be necessary in any declaration or other pleading to set forth the place in which any contract was made, or act done, unless when, from the nature of the case, the place is material or traversable." In this case the place was not traversable. That statute thus renders the statement of the place of the contract immaterial. Mr. Hogg in Pleading and Forms properly states the rule thus: "The rule respecting variances may be stated to be: that if the entire averment can be expunged without affecting the right to recover, it need not be proved; but if it cannot be thus stricken from the declaration without getting rid of a part essential to the cause of action, then, though the averment be more particular than it need have been, the whole must be proved, or the plaintiff cannot recover." Section 137, Hogg's Plead. & Forms. See *Payne* v. *Britton*, 6 Randolph 101.

But the true question in this case is, whether Jones is liable at all to Mankin. Jones relies on the fact that his promise to pay is not in writing, and is therefore not enforcible because of that provision of chapter 98 of the Code, providing that no action shall be brought, "To charge any person upon a promise to answer for the debt, default, or misdoings of another * * * unless the promise, contract, agreement, representation, assurance or ratification, or some memorandum or note thereof be in writing and signed by the party to be charged thereby or his agent." It is a rule of law that if the third person for whom money is promised remains still responsible to the person who supplies the articles or from whom the consideration proceeds, the promise to pay for the third person is collateral, as it is called, not an original promise, and therefore is not actionable because of said statute. This is laid down by JUDGE Cox in *Johnson* v. *Bank*, 60 W. Va. 326. When the consideration of the promise is for money to be furnished and received by a third person, if the transaction is such that the third person remains responsible to the person who fur-

nished him with such money or property, or from whom the consideration proceeds, such promise is collateral, and will not bind unless in writing, *Radcliff* v. *Poundstone*, 23 W. Va. 724. Apply this law in this case. Did Gibson still remain, in any event, liable to Mankin for the land which Mankin sold to Gibson? If he did, the oral promise of Jones is not binding. Now, Gibson, as a witness for the plaintiff, states that he agreed to pay Mankin, if he should not get the Trump Land from Jones. Besides such is the whole cast of the case from the circumstances and evidence. Before Jones came on the scene or met the parties, or had anything to do with the matter Mankin and Gibson had made their contract and ascertained the amount due Mankin. So Mankin states. Not a shadow of release of Gibson by Mankin appears. Thus Gibson, by the plaintiff's showing, was still debtor to Mankin, and therefore the promise of Jones was simply collateral to that of Gibson to Mankin, not an original, independent, unconditional promise to pay Mankin. At least Gibson remained liable to Mankin for the purchase money for the land. There was no legal novation of the debt. *Chenowith* v. *Nat. Bldg. Association*, 59 W. Va. 653. It is useless to further discuss this feature of the case, because the law applicable to it is expounded in so many cases.

The court refused the defendant an instruction (No. 1) that if the plaintiff's demand was based upon Jones' promise to answer for the debt of Gibson to Mankin, the jury must find for the defendant, unless that promise was in writing. To say the least, if that was not a question of law, it was a question addressed to the jury, that is, whether the facts were such as to make the promise collateral or not—and should have been given.

It is stated in the case of *Gerow* v. *Riffe*, 29 W. Va. 462, in the opinion, on much authority that the fact that a person has relinquished some valuable right or disadvantaged himself in consideration that another has promised to pay him the debt of a third person will not take the case out of the said statute, unless the party who promised to pay the debt of another is, as a part of the transaction, himself benefited. There must be a consideration inuring to his benefit, not a naked promise to pay the debt of another,

based on no consideration, not benefiting him. Even the written promise to pay the debt of another must have a consideration. *Winkler* v. *C. & O. Co.*, 12 W. Va. 699. He must be by his promise paying his own debt or acquiring property, in effect. If that is not the case he is not bound by his promise. The rule in America is this, that to be binding, "an original promise must be one in which the leading object of the promisor is not to become the surety or guarantor of another's debts, but to subserve or promote some interest of his own, although its effect may be to pay the debt of another." 20 Cyc. 189, 190. The release of an advantage by a creditor in consequence of the oral promise of a third person is not taken out of the statute, unless that advantage also directly "inures to the benfit of the promisor, so as in effect to make it a purchase by him of the creditor at a price measured by the amount of the debt." 20 Cyc. 193. This means, in this case, that although Mankin did convey land to Gibson and surrender his deed to his disadvantage, still, that did not benfit Jones. The law is that the promisor must be paid for his promise to pay the debt of another. He must actually get some benefit. For this proposition we may add *Ackley* v. *Parmeter*, 50 Am. Rep. 693, 698, 98 N. Y. 425. "An oral promise to pay for benefits previously rendered to a third person, but not upon the promisor's request or credit, is clearly collateral to the debt of the third person and therefore invalid, unless the promise is based upon a fresh consideration relating to the personal interest or property of the promisor." 29 Am. & Eng. Ency. L. (2d Ed.) 922. Sometimes it has been said that the fact that the creditor would be harmed by the failure of the third party to pay makes the promise good. That would nullify the statute in almost every instance. "It is now the universal doctrine that detriment to the promisee or benefit to the original debtor is not alone sufficient to withdraw the promise from the operation of the statute." 29 Am. & Eng. Ency. L. (2d Ed.) 927. In other words, the third party making the promise must derive benefit, to be bound. Same book 928. What else does the statute mean? For what made, if the mere promise, without benefit to the man making it, binds him? His protection against this was the very object of the statute. It is not a question of morality and justice,

but public policy, to prevent perjury to sustain false demands. It means that he is not bound for a naked promise to pay a debt of another; but if he himself gets property or other pecuniary benefit he is not merely and only paying the debt of another, but his own. In such case, where his promise is based on consideration going to him, the statute of frauds has really nothing to do with the case. It is only the case where one person at the request of a second person, for consideration, agrees to pay for him money to a third person. *Hooper* v. *Hooper*, 32 W. Va. 526, 535.

It is claimed that for the promise of Jones Gibson released to Jones a debt which he held against Jones, What debt? The evidence does not disclose any. How was Jones benefited by this promise? How was he better off than before his promise? That is the test. Jones did not owe Gibson anything. Perchance thereafter Jones might become indebted to Gibson should certain land (the Shumate Land) come to Jones through some instrumentality of Gibson; but it is not shown that it ever did so, or that Jones came to owe Gibson a binding debt. The burden of showing this lies upon Mankin as a part of his case, because he must show that Jones' promise went to pay his own debt or in some way inured to his benefit as a matter of value. For this reason we think the court should have given defendant's instruction No. 4 directing a verdict for the defendant.

I am aware that I have, at too great length, written old, old settled law; but it seems that under an erroneous practice under our construction of our constitution we must add volumes to the already vast numbers to iterate and reiterate old law.

Defendant's instructions Nos. 2 and 3 are not relied on in counsel's brief, and properly so.

On the trial the defence sought to show by Gibson while on the witness stand that he had, after the transaction aforesaid, given his note to Jones for the amount which Jones had paid, but the court rejected the evidence. It is true the note was given after the transaction, in the absence of Mankin, and under the general principles would be inadmissible, because *res inter alios acta;* but in this instance, the question being material whether Jones owed Gibson, or whether any debt ever arose in favor of Gibson against Jones, we think

this evidence admissible as tending to disprove such indebt-edness.

The defence asked Gibson whether the payment was made to accommodate Jones or Mankin and the court refused to allow it to be answered. We think the court ruled properly because it called for the mere opinion of the witness, whereas the question for whose accommodation or benefit, in a legal point of view, the arrangement was made, was a question of law on the facts.

The Court deems it proper on this occasion to call atten-tion to the fact that in many cases the stenographers' reports of evidence contain much useless, irrelevant matter. It is signally so in this case. The report contains remarks of court, remarks of counsel, interlocution between court and attorneys, and pages of argument of law questions before the court. Why should they go into the stenographer's report? It is the duty of the court to see that the stenographer's report does not contain so much irrelevant, improper matter. Attorneys in this Court have to labor over this matter. The Court has to read it, and litigants have to pay for it.

Judgment reversed, verdict set aside and new trial granted.

*Reversed.*