MORAZ v. MELTON.

Opinion delivered February 2, 1925.

1. FRAUDS, STATUTE OF—INTENTION OF PARTIES.—In determining whether an oral promise to pay another's debt is original or collateral, the intention of the parties at the time it was made must be regarded, in determining which the words of the promise, the situation of the parties, and all the circumstances attending the transaction should be considered.

2. FRAUDS, STATUTE OF—ORIGINAL PROMISE—EVIDENCE.—In an action to recover the price of coal bought by the company for which defendant was working, evidence held to sustain a finding that defendant's oral promise to pay for the coal was original, and not merely collateral within the statute of frauds.

Appeal from Franklin Circuit Court, Ozark District; *James Cochran*, Judge; affirmed.

STATEMENT OF FACTS.

C. L. Melton sued R. A. Moraz and John Dunkin to recover $308.66, alleged to be due for coal sold by the plaintiff to the defendant. The plaintiff also obtained a writ of attachment on the ground that the defendants were nonresidents and were about to remove their property out of the State without leaving sufficient property therein to pay their debts. This attachment was levied upon certain personal property belonging to R. A. Moraz.

The defendants denied that they were indebted to the plaintiff in any amount whatever for coal sold by him to them, or either of them. By way of cross-complaint they alleged that they were the owners of the drilling equipment upon which the writ of attachment had been levied, and claimed damages on account of their drilling operation having been suspended by the seizure of the property under it.

The case was tried before the circuit court sitting as a jury. The plaintiff was the principal witness for himself. According to his testimony, he was in the coal business in 1921, at Alix, Arkansas, and sold to the defendant, R. A. Moraz, three cars of coal, and there was due and unpaid on the purchase price of two cars of said

coal $303.66. These two cars of coal had originally been sold to a corporation, and the original bills of lading show that they had been consigned to the said corporation. The first car was shipped October 29, 1921, and the amount due on it was $166.66. The second car was shipped November 25, 1921, and the amount due on it was $142. When the second car arrived at Mulberry, Arkansas, the plaintiff called the station agent by telephone and told him to hold the car until his arrival. Upon the arrival of the plaintiff at Mulberry, he refused to let Moraz, who represented the corporation to which the coal was consigned, unload the car. Moraz said, "If you will let me have this car of coal, I will see that you get paid for your coal if it takes the last shirt off my back." The plaintiff relied on the assertion, and let Moraz have the car of coal. The testimony of the plaintiff is in narrative form in the bill of exceptions, and we copy from it the following:

"That he would not have given Moraz permission to unload the second car of coal shipped, which was evidenced by the bill of lading marked 'Exhibit B,' the same being one of the two cars the price of which is being sued for herein, unless Moraz had agreed to pay for all the coal witness had sold the Dunkin-O'Brien Oil Company, and also to pay for this particular car. That said Moraz repeatedly agreed to pay for all the coal he (Melton) sold the Dunkin-O'Brien Oil Company. Witness asserted that he let Moraz have the car of coal—the one he promised to pay for—and at the same time promised to pay for all the coal the Dunkin-O'Brien Oil Company owed for. The said car of coal that Moraz agreed to pay for at the time he agreed to pay for all the coal the Dunkin-O'Brien Oil Company had received was sold to Moraz for the same figure it was sold to the oil company for, *i. e.,* it was sold to the Dunkin-O'Brien Company for $142.50, and that was the price Moraz was to pay for it."

We copy from the redirect examination of the plaintiff the following:

"Witness stated that he looked to Moraz for the amount due on the coal; that said Moraz agreed to pay for it. That, in the Farmers' and Merchants' Bank of Mulberry, Moraz said if he (Melton) would let him unload the car of coal then on the siding in Mulberry, he (Moraz) would pay for all the coal the Dunkin-O'Brien Company had received; that Mr. Henry Moore was called to witness the agreement after the agreement had been made."

R. A. Moraz was the principal witness for the defendants. He denied having promised to pay for the coal, as testified to by the plaintiff, and also gave testimony as to the amount of damages suffered by the levying of the attachment on his drilling equipment.

The circuit court found for the plaintiff in the sum of $142, and judgment was rendered against the defendant, R. A. Moraz, for said sum. The case is here on appeal.

*Joseph R. Brown,* for appellant.

Findings of fact by a court, the same as by a jury, to stand on appeal must be based on substantial evidence. 158 Ark. 119; 126 Ark. 318; 111 Ark. 449; 118 Ark. 349; 102 Ark. 435; 150 Ark. 43; 127 Ark. 609; 65 Ark. 278. Conceding that there was a promise to pay by appellant, the promise was not legally enforceable because within the statute of frauds. While this statute was not pleaded, it is not necessary to do so. 19 Ark. 39; *Id.* 23; 141 Ark. 458; 129 Ark. 253. After the loading of the car and issuance of bill of lading title to the coal passed to the consignee named therein. 115 Ark. 221; 104 Ark. 215; 118 Ark. 117; 141 Ark. 161; 38 Ark. 414. Plaintiff would thereafter only have power to stop delivery in case of the insolvency of the consignee. Appellee however knew the condition of the consignee at the time shipment was made, and there was no change thereafter. 21 Pac. 886. Since plaintiff could not withhold delivery to the consignee, the alleged promise of appellant, even if made, was without consideration. 30 Ark. 50; 54 Ark. 151.

*Dave Partain,* for appellee.

HART, J. (after stating the facts). The principal ground relied upon by the defendants for a reversal of the judgment is that the promise of Moraz to pay for the coal, if made, was unenforceable under the statute of frauds.

In determining whether an oral promise is original or collateral, the intention of the parties at the time it was made must be regarded; and, in determining such intention, the words of the promise, the situation of the parties, and all of the circumstances attending the transaction should be taken into consideration. *Millsaps* v. *Nixon,* 102 Ark. 435, and *Black Bros. Lumber Co.* v. *Varner,* 164 Ark. 103.

The defendants base their right to a reversal of the judgment upon that part of the plaintiff's testimony to the effect that Moraz told him that if he would let him have the car of coal, he would see that he got paid for it.

The contention is that this promise is collateral under the statute of frauds. This testimony, however, is not controlling. On reexamination the plaintiff stated that Moraz had agreed to pay for the car of coal. Again he stated that Moraz had repeatedly agreed to pay for all the coal that the plaintiff sold the corporation which Moraz represented. He said that the second car of coal was sold to the Dunkin-O'Brien Company for $142.50, and that was the price that Moraz was to pay for it.

Again the plaintiff stated that he would not have given Moraz permission to unload the second car of coal unless he had agreed to pay for all the coal he had sold to the corporation, and also to pay for that particular car.

The court found for the plaintiff in the sum of $142, which was the price, less fifty cents, of the second car of coal.

The testimony of the plaintiff, which we have just referred to, might have been considered by the circuit court trying the cause as explanatory of the first part of the testimony of the plaintiff, to the effect that Moraz

told the plaintiff that, if he would let him have the second car of coal, he would see that he got paid for it. Therefore, when the testimony of the plaintiff is considered as a whole, the circuit court was legally justified in finding that Moraz had agreed to pay the plaintiff for the second car of coal.

On the question of the attachment but little need be said. The evidence shows that the defendants were nonresidents, and that the drilling equipment belonged to Moraz. The ground for the attachment was that the defendants were nonresidents of the State and were about to ship their property out of the State, not leaving sufficient property therein to pay their creditors.

No answer was ever filed by the defendants denying the existence of the ground for attachment as stated in the affidavit. The record shows that the attached property belonged to Moraz.

It follows that Dunkin was not injured by the levying of the attachment, and the effect of the judgment of the circuit court was to sustain the attachment as to Moraz. This finding was warranted under the facts as they appear in the record.

It follows that the judgment must be affirmed.