FOSTER-GRAYSON LUMBER COMPANY *v.* TALLEY.

4-3625

Opinion delivered December 10, 1934.

*McKay & McKay,* for appellant.

*Ezra Garner,* for appellee.

MEHAFFY, J. This action was begun by appellee against the appellant in a justice of the peace court in Columbia County to recover the sum of $78.13 alleged to be due appellee for labor performed by him for the appellant. The appellee filed in justice court a written complaint alleging that he was employed by the Foster-Grayson Lumber Company for a period of three years to haul logs for appellant. He alleges that in the months of August, September and October, 1933, he hauled logs for the appellant, and the balance due for hauling logs was $78.13.

The appellant appeared in justice's court, but did not file any written pleadings. It alleged, however that

appellee was not employed by appellant, but was employed by D. B. Wood, an independent contractor, and that the alleged agreement to pay appellee was void on account of the statute of frauds.

There was a verdict for the appellee, and an appeal taken to the circuit court, where it was tried by jury, and there was a verdict and judgment for the amount sued for. To reverse this judgment, this appeal is prosecuted.

The appellee had been hauling logs for three years, and was paid by Mr. Jameson. The small mill was operated by Wood and Jameson. Jameson sold the mill to Wood, and told the appellee that he was leaving, and had no further connection with the mill, and appellee testified that he did not know whether Wood would pay him, and he went to Mr. Foster, a member of the firm of appellant, and asked him about his pay, and he testified that Mr. Foster told him that he had always paid him, and would see that he got his money.

D. B. Wood testified that he never hired appellee, and that appellee hauled logs to the mill under Mr. Foster's instruction, and that Foster-Grayson Lumber Company got the entire output of the mill.

Carl Dees testified that he hauled logs, and that he and appellee went to see Mr. Foster, and that he told them that he was furnishing the timber and for them to get it delivered, and he would see that they got their money.

S. T. Wynne testified that he hauled logs, and that Foster hired him.

Jameson testified that when he sold out, he notified the employees, and told them they would have to look to Wood for their money.

Smith Foster testified that he told appellee that he, Foster, would pay as long as Wood had any money coming to him; that appellee had worked for him at Emerson for some time, and, when Jameson started this mill, he sent appellee down there; that he did not remember whether appellee and Dees came to see him or not.

The evidence conclusively shows that the hauling of the logs was directly beneficial to the appellant, and

therefore the promise of Foster to pay was an original promise, and not within the statute of frauds.

Appellant cites and relies on the case of *Moraz v. Melton,* 167 Ark. 629, 268 S. W. 41, and appellant urges that this case is controlling here. In the Moraz case the court said: "In determining whether an oral promise is original or collateral, the intention of the parties at the time it was made must be regarded; and, in determining such intention, the words of the promise, the situation of the parties, and all of the circumstances attending the transaction should be taken into consideration." The court also said in that case: "The defendants base their right to a reversal of the judgment upon that part of the plaintiff's testimony to the effect that Moraz told him that, if he would let him have the car of coal, he would see that he got paid for it." In the instant case, the evidence shows that Foster told appellee he would see that he got his pay. All of the evidence shows that it was the intention of the appellee to look to the appellant for his pay, and it also shows that the promise made by Foster was directly beneficial to appellant. We also think that this case is controlling here.

The appellant also calls attention to the case of *Elm Springs State Bank* v. *Bradley,* 179 Ark. 437, 16 S. W. 585. If this were a promise to pay the debt of Wood, and that was all that the evidence showed, the promise would be collateral, and would be within the statute of frauds, as held by the Elm Springs State Bank case, and the court there said: "The fact that the promise was the sole and inducing cause did not transform the contract into an original undertaking."

If, however, the promise had been made because it was directly beneficial to the other party, it would not be within the statute of frauds. We find nothing in the last case mentioned that in any way modifies the cases of this court which hold that the undertaking is original if it is beneficial to the promisor.

In the case of *Long* v. *McDaniel,* 76 Ark. 292, 88 S. W. 964, this court held that the promise was original because it was founded on a consideration directly beneficial to the promisor. See also *Cauthron Lumber Co.* v.

*Hall,* 76 Ark. 1, 88 S. W. 594; *United Walnut Co.* v. *Courtney,* 96 Ark. 52, 130 S. W. 566; Wood on Statute of Frauds, 264; *Chapline* v. *Atkinson,* 45 Ark. 76.

"This court has several times held that a parol promise to pay the debt of another is not within the statute of frauds when it arises from a new and original consideration of benefit or harm moving upon the newly contracting parties." *Hunt* v. *Taggett,* 160 Ark. 617, 255 S. W. 8, 873; *Louisiana Oil Refining Corp.* v. *Scroggins,* 189 Ark. 707, 74 S. W. (2d) 971.

In discussing the statute of frauds, the West Virginia Supreme Court of Appeals said: "It means that he is not bound for a naked promise to pay the debt of another; but, if he himself gets property or other pecuniary benefits, he is not merely and only paying the debt of another, but his own. In such case, where the promise is based on a consideration going to him, the statute of frauds has nothing to do with the case." *Mankin* v. *Jones,* 63 W. Va. 373, 60 S. E. 248, 15 L. R. A. (N. S.) 214.

In a note to the above case, it is said: "Thus, if, in making a promise, the primary object of the promisor was to subserve or promote some interest or purpose of his own, the promise will be treated as original, although its effect is to pay the debt of another."

We therefore conclude that the promise was original and not collateral. In addition to this, however, Wood testified that he did not hire the appellee, and Dees and appellee testify that they went to see Foster before they went to work, and that Foster told them in substance that he would see that they got their money, and Foster himself testified that he does not remember whether they came to see him or not, and he does not deny their testimony.

The judgment is therefore affirmed.