THOMPSON *v.* PHILLIPS.

5-805 284 S. W. 2d 842

Opinion delivered December 19, 1955.

*Tom Gentry* and *John K. Shamburger,* for appellant.

*E. M. Arnold,* for appellee.

ED. F. McFADDIN, Associate Justice. This appeal presents a question concerning election of remedies. The Trial Court was of the view that the appellant—by certain allegations in the original complaint—had elected to release the appellee. Accordingly the appellant's complaint was dismissed; and this appeal ensued.

On June 8, 1953 appellant (Thompson) filed the present action against L. A. Phillips individually and also against North Webster Parish Lease and Oil Company, Inc., an Arkansas corporation, hereinafter referred to merely as "Corporation." The original complaint alleged that L. A. Phillips was president of the corporation, and that the plaintiff had done certain work for which he was entitled to judgment for $5,807.50. The complaint stated:

"There was an agreement between the plaintiff, Cline Thompson and the said defendants that he would furnish his equipment and labor in performing the necessary work and that he would be paid therefor. . . .

"Plaintiff further states that at the time this contract was entered into, he was informed that the said North Webster Parish Lease and Oil Company, Incorporated had no money in its treasury, but the defendant, L. A. Phillips, who was President of said Corporation, personally guaranteed that the said Cline Thompson would be paid according to the terms of the contract above described. . . .

"That said defendant corporation and L. A. Phillips are justly indebted to the plaintiff Cline Thompson, in the amount of $5,807.50 for work performed under the terms of said contract. That demand has been made therefor and defendants have failed and refused to pay same. . . .

"Wherefore, Plaintiff Cline Thompson prays judgment against the said North Webster Parish Lease and Oil Company, Incorporated and L. A. Phillips, jointly and severally, in the sum of Five Thousand Eight Hundred Seven and 50/100 Dollars ($5,807.50), . . . . and for all other legal relief. . . ."

On September 14, 1953, in response to defendant's motion to make more definite and certain, Thompson filed an amended and substituted complaint, which contained these allegations:

"That plaintiff Cline Thompson states that on or about the 12th day of December, 1952, he was approached by J. T. McKinzey and L. A. Phillips, officials of the North Webster Parish Lease and Oil Company to clear some land and construct a road in Webster Parish, Louisiana, in order that the North Webster Parish Lease and Oil Company might drill an oil well upon said property. Said work was to be performed upon the L. L. Clements and the Joe Clements land in said Parish in Louisiana. It developed at this time that the North Webster Parish Lease and Oil Company had no funds with which to pay for the work to be performed by Thompson. In order to induce Thompson to perform this work, the said L. A. Phillips orally agreed with Thompson that he would personally pay him for doing this work. Upon Phillips' oral contract with Thompson to pay for the work performed, Thompson began the work soon thereafter and worked upon the project until about the middle of March, 1953, when he was told to keep his equipment on a standby basis. . . .

"That said defendant L. A. Phillips is justly indebted to the plaintiff Cline Thompson, in the amount of $5,807.50 under the terms of said contract. That demand has been made therefor and defendant has failed and refused to pay same."

In another pleading filed September 14, 1954, there were also these statements made by Thompson:

"That the contracts heretofore set forth in plaintiffs' original complaint and entered into between the plaintiffs and defendants were oral contracts. . . . That the agreement of L. A. Phillips was part of the consideration for plaintiffs' undertaking."

Still later (on February 17, 1955) in response to defendant's further insistence Thompson stated:

"That the plaintiff, Cline Thompson, states that some few days prior to the 12th day of December, 1952, he discussed with a Mr. J. S. Turner the possibility of the plaintiff being employed to clear some land and construct a road in Webster Parish, Louisiana, in order that the North Webster Parish Lease and Oil Company might drill an oil well upon said property. It developed that the North Webster Parish Lease & Oil Company had no money to pay for the work to be performed, and the plaintiff called the said L. A. Phillips in Little Rock, Arkansas, by long distance telephone from Minden, Louisiana, to discuss this work with him. In this long distance telephone conversation, which took place on or about the 12th day of December, 1952, the defendant, in order to get the land cleared and the road under construction, promised the plaintiff that if he would do the work that he, L. A. Phillips, would personally pay him for such work. That upon Phillips' oral contract with Thompson to pay for the work performed, Thompson began the work soon thereafter, and worked upon such project until on or about the 15th day of March, 1953, when Thompson was then instructed by Phillips to keep his equipment on a standby basis."

Based on all of the foregoing allegations in Thompson's pleadings, the defendant, L. A. Phillips, on February 18, 1955, filed this "Motion to Dismiss":

"That this action was originally filed on June 8, 1953, by plaintiff against North Webster Parish Lease and Oil Company, Inc., and against this defendant, L. A. Phillips; that in said original Complaint so filed Cline Thompson alleged 'that on or about the 15th day of De-

cember, 1952, he entered into a contract with the said defendant, North Webster Parish Lease and Oil Co., Inc., to build a road and clear land in Webster Parish, Louisiana, in order that said defendant corporation might drill an oil well upon said property.' Plaintiff also alleged in said Complaint that the said L. A. Phillips 'guaranteed that the said Cline Thompson would be paid according to the terms of the contract above described.' In response to a motion filed by defendants North Webster Parish Lease and Oil Company, Inc., and L. A. Phillips, plaintiff filed a reply herein on or about September 10, 1953, in which he stated that the 'contracts' heretofore set forth in plaintiff's original Complaint and entered into between the plaintiffs and defendants were oral contracts. Plaintiff has now elected to rely on an Amendment to an Amended and Substituted Complaint in which he alleges that he made a contract over long distance telephone with the defendant, L. A. Phillips, under which the said L. A. Phillips became primarily liable on the same obligation he originally alleged to have been incurred by defendant North Webster Parish Lease and Oil Company, Inc., and which he at that time alleged defendant L. A. Phillips orally guaranteed; that the allegations and theory of the Amended and Substituted Complaint with Amendment thereto are wholly inconsistent with the allegations in the original complaint; that plaintiff is now seeking a recovery from a defendant which recovery so sought is wholly inconsistent with that originally alleged in this suit; that the present allegations seek to hold the defendant L. A. Phillips primarily liable although the allegations in the original Complaint and Response to Motion to Make More Definite and Certain stated that the aforesaid Corporation was primarily liable; that the plaintiff is bound by his election of remedies as originally sought and is estopped to seek recovery against the defendant, L. A. Phillips, under an allegation that he is primarily liable for the debt sued on after first electing to sue the corporation as being primarily liable and defendant Phillips as being liable under a guaranty agreement."

We have given the pleadings in considerable detail so that the full picture will be visible. The Trial Court sustained Phillips' Motion to Dismiss, and Thompson has appealed from the final order of dismissal of his claim against Phillips. The question is whether Thompson— by his pleadings in this case—*definitely and finally elected at any stage of these pleadings to pursue the corporation alone* as primarily liable and Phillips as only a guarantor. Appellee claims: (a) that in the original complaint Thompson sought to hold the corporation liable as original debtor and Phillips liable on an oral guaranty; (b) that the guaranty was within the Statute of Frauds[1] and therefore unenforceable; and (c) that because of the allegations in the original complaint, Thompson cannot now be heard to say that Phillips is liable on an enforceable original promise.[2] Thompson contends: (a) that the allegations in the original complaint showed a clear attempt to recover from both the Corporation and Phillips; (b) that the use of the word "guaranteed" in the original complaint is clarified in all subsequent pleadings; and (c) that there has been no allegation by Thompson to the effect that he was seeking recovery only from the Corporation on an original promise.

With the issue posed, we search for the applicable law. In 28 C. J. S. 1057 this definition is given:

"Election of remedies is the adoption of one of two or more coexisting remedies, with the effect of precluding a resort to the others."

And in discussing the necessity of election this is stated in 28 C. J. S. 1061 *et seq.*:

"Between Coexisting but Inconsistent Remedies. Generally, a party having two or more remedies which regardless of their form or class are based on inconsistent theories must elect between them; . . .

[1] The performance was in Louisiana; and Louisiana has a Statute of Frauds, involving the answering for debts, defaults and miscarriages of another, somewhat similar to the Arkansas Statute, § 38-101.

[2] The distinction between an original promise and a promise to answer for the debts of the other is well illustrated and discussed in our case of *Foster-Grayson Lbr. Co.* v. *Talley*, 190 Ark. 37, 76 S. W. 2d 950.

"Between Concurrent and Consistent Remedies. The pursuit of one remedy will exclude the pursuit of another only where the remedies are inconsistent; where remedies are concurrent and consistent, whether against the same person or different persons, a party may pursue one or all of such remedies until satisfaction is had, and similarly, no election is required between remedies for distinct causes of action arising out of separate and distinct facts."

In 18 Am. Jur. 129, in defining "Election of Remedies," the text says:

"Election is simply what the term imports—a choice shown by an overt act between two or more inconsistent rights, either of which may be asserted at the will of the chooser alone. An election of remedies may be defined as the choosing between two or more different and co-existing modes of procedure and relief allowed by law on the same state of facts. . . ."

And in stating the essentials[3] to constitute election it is said in 18 Am. Jur. 133:

"Stated briefly, the essential conditions or elements of election of remedies are: (1) The existence of two or more remedies; (2) the inconsistency between such remedies; and (3) a choice of one of them. If any one of these elements is absent, the result of preclusion does not follow."

Our case of *Belding* v. *Whittington*, 154 Ark. 561, 243 S. W. 808, 26 A. L. R. 107, presents a classic example of election of remedies: there a litigant had sued at law for damages for breach of a contract to convey real estate; and such action was held to be an *election of remedies* so as to preclude a later suit for specific performance based on the same real estate contract. The

---

[3] One of the most enlightening discussions is that contained in the note in 116 A. L. R. 601 entitled "Doctrine of election of remedies as applicable where remedies are pursued against different persons." This Annotation in A. L. R. has caused the publishers of American Jurisprudence to add in the Pocket Supplements to the title on "Election of Remedies" a section numbered 27.1 concerning "Election against different persons."

case of *Home Life Ins. Co.* v. *Arnold,* 196 Ark. 1046, 120 S. W. 2d 1012, likewise involved an election of remedies. There the beneficiary of the policy had sued the reinsurance company (Central States Life Ins. Co.) upon the contract of reinsurance. We held that the beneficiary had thereby elected to affirm the reinsurance contract and could not later be heard to sue the original insurance company and allege that the reinsurance contract was void.

The case at bar is not governed by the foregoing cases, but is governed by the rule stated in *Wood & Henderson* v. *Claiborne,* 82 Ark. 514, 102 S. W. 219, 118 Am. St. Rep. 89, which is itself one of our leading cases on election of remedies. In *Wood* v. *Claiborne* a minor had been injured and a recovery had been made by his father as next friend. The attorneys who were successful in making the recovery paid the minor's money to the father of the minor, since there was no guardian. When Claiborne, the minor, reached maturity he sued his father and recovered judgment but was unable to obtain satisfaction. Thereupon Claiborne sued the attorneys for wrongfully paying his money to his father. The attorneys pleaded ''election of remedies,'' contending that the suit against the father precluded the subsequent suit against the attorneys. This Court, speaking through Judge RIDDICK, held that there had been no election of remedies so as to prevent the action against the attorneys for wrongfully paying the money.

In the case at bar the pleadings reflect that throughout the entire negotiations leading up to the original contract it was recognized by the parties that the Corporation was without funds and that Thompson did the work after Phillips had agreed to pay for it. Under the case of *Foster-Grayson* v. *Talley,* 190 Ark. 37, 76 S. W. 2d 950, the allegations here were sufficient to make Phillips' promise an original undertaking, and when Thompson filed his first complaint he asked judgment against Phillips. He used the word ''guaranteed'' instead of ''agreed'' in his original complaint filed June 8, 1953;

but he entirely clarified his position when in the Amended and Substituted Complaint, filed September 14, 1953, he said that Phillips agreed that he "would personally pay" Thompson. In the prayer to the original complaint and at every step in the pleadings, Thompson showed his intention to hold Phillips liable for the debt. He never elected to look solely to the Corporation, and the Trial Court was in error in holding that Thompson had elected to release Phillips.

The judgment dismissing Thompson's complaint against Phillips is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

