GEORGE M. COLBATH

*vs.*

EVERETT B. CLARK SEED COMPANY.

Aroostook.  Opinion October 22, 1914.

*Agent.  Contract.  Delivery.  Original and Collateral Promise.  Promise.*
*Promise to Pay Debt of Another.  Statute of Frauds.*
*Telephone Message.*

Upon an issue as to whether a promise is original or collateral;

*Held*:

1. Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damages to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability.

2. When a benefit, legal or pecuniary, to the promisor, is the inducement for a promise for indemnity, such promise is not within the statute of frauds as being a special promise to answer for the debt or the fault of another, but is an original promise binding upon the promisor.

On motion for new trial by defendant.  Motion overruled.

This is an action of assumpsit on an account annexed to the writ to recover of the defendant the sum of $1093.20 for potatoes sold and delivered in April, 1912.  The defendant plead the general issue. The jury returned a verdict for plaintiff of $1022.54, and the defendant filed a general motion for a new trial.

The case is stated in the opinion.

*James Archibald, and W. T. Spear,* for plaintiff.

*Powers & Guild,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHILBROOK, JJ.

PHILBROOK, J.  The plaintiff having obtained a verdict in his favor, the defendant brings this case before us on a general motion to have the verdict set aside as being against the law and the evidence.

Briefly stated the contention between the parties is whether the defendant made an original promise to pay for potatoes shipped by the plaintiff to the defendant, and received by the defendant, or whether the defendant merely made an oral promise to answer for the debt of another which could not be enforced under the provisions of R. S., Chap. 113, Sec. 1, par. II.

It appears that the defendant had a contract with one Klippel whereby the latter was to furnish a large quantity of potatoes to the defendant. The defendant claimed that it had advanced money on the contract, or, as the defendant claimed, it had paid in advance for nearly all the potatoes which Klippel might purchase and deliver to the defendant. It was not claimed by either party that Klippel was the agent of the defendant.

In the early part of April, 1912, the plaintiff telephoned Fred M. Clark, secretary and treasurer of defendant company, who was then at Fort Fairfield, and this telephone message was the only method employed in making the contract on which plaintiff now relies. The testimony given by the plaintiff on direct as to the conversation over the telephone is as follows; "I told Mr. Clark that I had been informed that Klippel was no good financially, and I could not ship any potatoes on his order, and I could not ship them unless he agreed to pay for them. He told me he could not pay for them because he had already paid Mr. Klippel. I says you have not paid for my potatoes and I am not going to ship them unless you will pay for them. He says I have got to have the potatoes and I will pay for them if Klippel don't. I says I have been informed that Klippel is no good and I will not ship them unless you agree to pay for them, and he says all right, I will pay for the potatoes if Klippel don't, let the potatoes go forward. I hung up the receiver and shipped the potatoes and sent him the bill of lading." On cross examination the plaintiff stated the substance of the telephone interview in terms somewhat more favorable to his contention and said that he charged the potatoes to the defendant and sold them on the credit of the defendant but the following questions and answers appear in the cross examination of the plaintiff;

"Q.  Didn't you ship these potatoes because you understood Mr. Clark to agree to pay if Klippel didn't?

A.  That is just what I did; yes, sir.

Q.  And that was his agreement?

A.   Yes, sir."

The plaintiff also gave these answers in his cross examination.

"But you say Mr. Clark did tell you that if Klippel didn't pay he would?

A.   Yes, sir.

Q.   And you accepted that agreement?

A.   Yes, sir."

In a letter from the plaintiff to the defendant dated May 4, 1912, he tells the defendant "I had my man on the phone on same line so I have witness to conversation we had over the phone." This important witness was not produced at the trial nor was his absence accounted for, and although plaintiff testified that he charged the potatoes to the defendant his books showing such charge were not produced nor their absence accounted for.

Mr. Clark's testimony as to the telephone interview varied materially from that of the plaintiff. He states as follows:

"Someone on the 'phone in Mr. Klippel's office said, my name is Colbath, and I have just sold a car of potatoes to Mr. Klippel, and I want the shipping instructions. And I turned to Mr. Klippel, and he says, yes, that is the car that is to go to Milford. And I says, the shipping instructions Mr. Klippel says is to the Everett D. Clark Seed Co., Milford, Connecticut; and he took it down,—that is, he took the time to take it down, apparently. And he then said, now, Mr. Clark, who is going to pay for these potatoes? And I said, our dealings are entirely with Mr. Klippel, we have paid for these potatoes, and we are dealing only with Mr. Klippel. And I said, further, Mr. Klippel is good for a car of potatoes, isn't he; and Mr. Colbath replied, yes, I guess he is all right, and so are you good for a car of potatoes, aren't you; and I replied, yes, I guess we are all right. Colbath says, that is all I want to know; and I requested that the bill of lading be gotten to me so I could get it on the morning train the day following. He also said he was going that afternoon away, and he would arrange to have it left with the station agent; and as I came through, I got the bill of lading at the Fairmont Station as I remember it."

The defendant also introduced two letters written by the plaintiff less than a month after the telephone conversation transpired which are as follows:

Easton, Me., 4-30, 1912.

Everett B. Clark Seed Co.,
       or Mr. Clark.

Dear Sirs:—

I have not received pay from Mr. Klippel for that car seed ship you which you guaranteed payment. I have not been home since I went south the day I sold the car potatoes. Wish you would look after it, I need the money. I am at Bristol, Ct., 74 S. Elm St.

Yours truly,

G. M. COLBATH.

Easton, Me., May 4, 1912.

The Everett B. Clark Seed Co.,
       Milford, Ct.

Dear Sirs:—Yours at hand, I am surprised at the stand you take in regard to car potatoes, you surely have not forgot the conversation we had over the phone when you were at Fort Fairfield.

Mr. Klippel called me wanted car seed I made him price he said would see his man and let me know. I called up C. E. Spencer and asked him if Klippel was all right he said he would not sell him without the cash, but you was going to have the potatoes what ever you said was all right. I did not have time to arrange to get pay of Mr. Klipple before the potatoes went forward because he wanted them to go that night and I was going on 4 P. M. train that night so I called you and told you could not let potatoes go with being paid for for. You said you had already advanced the money for the potatoes but if Mr. Klipple did not pay for them you would so I let the potatoes go and billed them straight to you and left the bill of laden and invoice with the station agent at Easton for you. Now Mr. Klippel may pay for these potatoes all right when I get home but if he don't I shall expect you to, just as you agreed to over the phone. I had my man on the phone on same line so I have witness to conversation we had over the phone. Will be home last of next week.

Yours truly,

G. M. COLBATH.

We have endeavored to fairly state the substance of the evidence relating to the contract adduced by each party to this suit.   Upon this evidence the defendant says that it has not made any promise which can be enforced against it; that such promise as it did make was not original, but collateral and within the statute of frauds.   The plaintiff says otherwise.

The case presents an interesting field for research.   At the outset we must observe that the potatoes were not delivered to Klippel but were delivered to the defendant at Milford, Connecticut, in accordance with shipping instructions given the plaintiff by defendant's agent, and presumably the defendant received the benefit of such delivery.   The benefit thus accruing, as to its legal effect upon the promise, has furnished much discussion in many cases and the differences in opinion between such learned jurists as Chief Justice Shaw of Massachusetts and Chancellor Kent of New York is interesting and marked.   For an exhaustive and able discussion of this question see *Hurst Hardware Company* v. *Goodman,* 68 W. Va., 62; 69 S. E., 898; Ann. Cas. 1912 B, 218.   It is also noteworthy that not only has the New York court now substantially adopted the views of the Massachusetts court but the latter have been adopted by the Federal Court.   *Emerson* v. *Slater,* 22 How., 28; *Davis* v. *Patrick,* 141 U. S., 479.   The rule as it appears in *Emerson* v. *Slater* is "Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damages to the other contracting party, his promise is not within the Statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability."

"When a benefit, legal or pecuniary, to the promisor, is the inducement for a promise of indemnity, such promise is not within the statute of frauds as being a special promise to answer for the debt or default of another, but is an original promise binding upon the promisor."   *McCormack* v. *Boylan,* 83 Conn., 686;  78 Atl., 335;  Ann. Cases 1912, A, 882.

If there were no element of benefit to the defendant in this case we should be of opinion that the plaintiff had only proved a promise

which was within the statute of frauds, but that element of benefit being so plainly apparent, under the authorities cited we must hold otherwise.

*Motion overruled.*