BLACK BROTHERS LUMBER COMPANY *v.* VARNER.

Opinion delivered April 28, 1924.

1. FRAUDS, STATUTE OF—PROMISE TO PAY ANOTHER'S DEBT.—In a suit against a corporation and another on an account for supplies furnished to the latter, whether the corporation agreed to purchase the supplies as an original undertaking or as security for the latter, *held* for the jury.

2. FRAUDS, STATUTE OF—ORIGINAL OR COLLATERAL UNDERTAKING.— Where a corporation promises to pay for supplies furnished to another, as an original undertaking, the undertaking is not within the statute of frauds, but, if the corporation is merely surety for the purchaser, the case is within the statute, and must be evidenced by writing.

Appeal from White Circuit Court; *W. D. Davenport,* special judge; affirmed.

*Brundidge & Neelly,* for appellant.

The promise to pay was a collateral undertaking, and not an original one. 102 Ark. 438; 12 Ark. 174; 88 Ark. 592.

*J. N. Rachels,* for appellee.

WOOD, J. This is an action by H. W. Varner against J. F. Cooper and Black Brothers Lumber Company, a corporation (hereafter called lumber company), to recover the sum of $309.35 on an account which he alleged the lumber company purchased for Cooper and one or two other parties. The lumber company denied that it was indebted to Varner for the account of J. F. Cooper, and also pleaded the statute of frauds.

Varner testified that he was a merchant at Searcy, and was acquainted with Frank Cooper and Black Brothers, composing the lumber company. On the 5th of August, 1921, Frank Cooper had a little account with witness. He went to work for the lumber company, and was running a boarding-house down there, at which the lumber company timbermen boarded. H. W. Black was then in charge of the lumber company as local manager. Cooper applied to witness for credit, and witness refused him. After that he sold some stuff for the boarding-house on the credit of Black, who was representing the lumber company. The witness exhibited his account, and testified to the items purchased by Cooper, which were charged to Cooper and the lumber company, amounting to $878.60, on which there were credits bringing Cooper's account down to the sum of $284. Witness sold goods to Black for one Beatty in the sum of $9.30, and also to one Bates in the sum of $10.30, which made the total amount of the account of Cooper and the other parties $309.35, as claimed. The lumber company knew that Cooper was behind with witness, and agreed to pay witness if he would extend credit to Cooper, which witness did, and the lumber company admitted its liability on the account from time to time. Black begged for time in which to pay the account, saying that lumber and ties were slow about moving, and asked witness to give him time to collect for the lumber that he had sold. Black never denied liability for Cooper's account until Cooper moved away. When Black first agreed to pay Cooper's account,

the account was charged in Cooper's name; and Black told witness he would be responsible for it. He told witness to say to Cooper that whatever he needed to run the boarding-house the lumber company would pay for. Some of the orders from Cooper were brought in by him, and some were brought by Black. In the new book that witness opened witness entered the account on one page in the name of the lumber company and at another page in the name of the lumber company and Cooper.

Cooper testified that, beginning some time in 1921, he had a contract for running the mill, about fifteen miles from Searcy, for the lumber company, by the thousand, and also running the boarding-house at so much a meal. Varner refused to credit him. Witness told Black that he would have to have stuff to run his boarding-house, and Black said that he would see that witness got it, and witness did get it. Very often Black bought the goods himself, and frequently witness would make out the bills and give them to Black. Witness identified the orders which he wrote to Black, gave or sent them to him, and he would see that it came down either over the railroad or in the wagon, and a few times he brought the stuff himself. There had never been a settlement between witness and Black. He owed witness $371, and, including Varner's account, about $600. The lumber company had nothing to do with running the boarding-house or with the mill, as witness was cutting under a contract at so much a stick. Black had admitted liability to witness several times for Varner's account. He asked witness how much the account was.

Dr. Gray testified that he attended Frank Cooper's family as physician and surgeon while they were at Black Brothers' mill in 1921, part of the time, and that Black stood for part of it. Black called witness up and asked him if he would go down there, and witness replied that he would if Black would stand for it, and Black said that he would.

Black testified that, when Cooper moved down to take charge of the boarding-house, they had a contract with him for cutting ties at so much per thousand feet. Varner asked witness if he would stand for Cooper's account, and witness told him that they would not stand for anybody's account. After that, Varner asked witness several times for money on Cooper's account, and witness told him that he would pay it when Cooper had it coming. One day Varner told witness that Cooper had got in pretty deep with him, and asked witness if he was going to pay the account, and witness told him that he would not; that the lumber company had not stood for the account, and that they would not pay it. Cooper then owed the lumber company three, four, or five hundred dollars. Cooper sent in orders by W. A. Cooper, who was down there every day, asking Varner to send out groceries. Witness turned over some checks to Varner and charged them to Cooper. Witness would be down at the plant, and Cooper would send orders in for groceries by witness, with the request for witness to bring them out, and witness would have Varner send the bill so that he could take it out to Cooper. Witness sometimes took the groceries out. Witness credited Cooper with all the lumber and board bills of the men working for the lumber company, and sent him the money for the difference between the board of the men and the amount due him on his contract for sawing lumber. Cooper would say to witness that he had so many logs in the woods, and request witness to pay Varner for them. Witness drew those checks direct to Varner. Often he sent Cooper money for his pay-roll. Witness was ready to settle with Cooper any day he would bring his books up. The lumber company had an account against Cooper, and it was ready to settle with him any time he would bring his papers up, if there was anything due him. He never at any time agreed to pay the Varner account.

The court instructed the jury to return a verdict in favor of Varner against Cooper, and that, if they found

from the testimony that the lumber company promised Varner to pay for the goods as an original undertaking on its part, then the jury should return a verdict in favor of Varner against the lumber company for the amount of Varner's account; but that, if the goods were purchased by Cooper, and the lumber company was a mere surety for the debt, then, before the jury could find in favor of Varner against the lumber company for Cooper's account, they would have to find that the lumber company agreed in writing to pay such account; that the only question for the jury to determine was whether or not it was the lumber company's debt or Cooper's debt; that, if it was an original undertaking of the lumber company, it did not have to be in writing. The lumber company objected and duly excepted to these instructions.

The lumber company prayed the court to instruct the jury that, before it could be held for the debt of Cooper, it must have agreed to pay for same in writing, and, if the jury found from the evidence in the case that there was a promise to pay, but that the same was not in writing, then the verdict should be for the lumber company so far as the amount owing by Cooper is concerned, which prayer the court refused, and to which ruling the lumber company duly excepted. The jury returned a verdict in favor of Varner in the sum of $309.35. From the judgment against the lumber company in Varner's favor for that sum is this appeal.

In *Jonesboro Hdw. Co.* v. *Western Tie & Timber Co.,* 134 Ark. 543-546, it is said: "We have several times held that a parol promise to pay the debt of another is not within the statute of frauds when it arises from some new and original consideration of benefit or harm moving between the newly contracting parties." (Citing cases).

In *Millsaps* v. *Nixon,* 102 Ark. 435, we said, at page 438: "It is the settled law in this State that, in determining whether an oral promise is original or collateral, the intention of the parties at the time it was made must be regarded; and, in determining such intention, the

words of the promise, the situation of the parties, and all of the circumstances attending the transaction should be taken into consideration.''

Applying the above doctrine to the facts of this record, it occurs to us that it was an issue of fact for the jury, under the evidence, whether or not the appellant agreed to purchase the goods of the appellee as an original undertaking and not merely as a security to the appellee for Cooper in the amount of appellee's account against Cooper and the appellant. Such being our conclusion, the court did not err in refusing appellant's prayer for a directed verdict. The court likewise submitted the issue of fact to the jury under correct declarations of law. *Arkadelphia Milling Co.* v. *Green*, 142 Ark. 565.; *Grady* v. *Dierks Lbr. & Coal Co.*, 149 Ark. 306.

The record does not show any error in the rulings of the trial court, and its judgment is therefore affirmed.