OIL CITY IRON WORKS *v*. BRADLEY.

Opinion delivered May 10, 1926.

1. FRAUDS, STATUTE OF—PROMISE TO PAY ANOTHER'S DEBT—JURY QUESTION.—If the evidence is in conflict as to whether a promise to pay another's debt is independent or collateral, the question is for the jury.

2. FRAUDS, STATUTE OF—PROMISE TO PAY ANOTHER'S DEBT—WHEN NOT COLLATERAL.—Whenever the main purpose of the promisor is not to answer for another, but to subserve some pecuniary or

business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability.

3. FRAUDS, STATUTE OF—PROMISE TO PAY ANOTHER'S DEBT.—A finding that a promise by the vendor of an oil drilling rig to see that laborers employed in drilling an oil well got paid for their wages was independent and not collateral is sustained by proof that the vendor was interested in having the well drilled, in order that it might collect the price of the rig.

4. PRINCIPAL AND AGENT—SCOPE OF AUTHORITY—EVIDENCE.—An agent may testify as to his agency and the extent of the authority with which he is clothed.

5. PRINCIPAL AND AGENT—SCOPE OF AUTHORITY.—An agent having the exclusive management of a corporation dealing in oil well drilling rigs had apparent authority to bind the corporation to pay the wages of laborers employed in drilling an oil well where the corporation was interested in having the well drilled in order to collect the price of a rig.

Appeal from Hot Spring Circuit Court; *Thomas E. Toler,* Judge; affirmed.

STATEMENT OF FACTS.

B. B. Bradley, D. W. Clark, Truman Works, Jim Coleman, Rufus Robbins and N. C. Phillips brought separate suits in the justice court against the Oil City Iron Works to recover the amounts alleged to be due them for wages. Each one recovered judgment for the amount sued for, and the defendant appealed to the circuit court. The cases were consolidated and tried together in the circuit court.

According to the evidence for the plaintiffs, they were employed by R. C. Houston to drill an oil well near Princeton, in Dallas County, Arkansas, during the year 1923. Houston got behind in the payment of their wages, and H. V. Miller, the agent of the Oil City Iron Works, came to the oil well where the plaintiffs were working and paid part of the plaintiffs in full and the rest of them part of their wages. Houston again got behind with the wages of the plaintiffs, and they notified him that they were going to quit work. Miller came to the well again

with Houston, and told the plaintiffs that the Oil City Iron Works · had sold Houston the drilling rig and that Houston owed it a balance on the purchase price. Miller told the plaintiffs that, if they would continue work and finish the well, the Oil City Iron Works would see that they got paid for their labor. Miller further told the plaintiffs that, in the event they failed to strike oil in the well that they were digging and Houston should remove the drilling rig and rent it out, the rents would be paid through the Oil City Iron Works, and that it would see that their wages were paid out of the first rents received for the rig.

Miller further stated that, in the event the drilling rig was sold, his company would pay the plaintiffs their wages out of the proceeds of the sale. The plaintiffs relied upon these representations, and returned to work. They would not have continued to work if Miller had not assured them that the Oil City Iron Works would see that they got their money. They worked on a few days longer, and Miller came out one afternoon and gave them a written notice as follows:·

"You are hereby notified that all the drilling machinery, tools, derrick, and so forth on this location are the property of the Oil City Iron Works, and that the said Oil City Iron Works is in no wise liable for the payment of any labor bills that may hereafter accrue for labor done in and about this well, and you are especially notified that no claim that you may hereafter have against any person for any labor so done shall operate as a laborer's lien against the said Oil City Iron Works and the above mentioned property."

H. V. Miller was a witness for the defendant. According to his testimony, he was the agent for the Oil City Iron Works, and sold the drilling rig in question to R. C. Houston for $12,500. Five thousand dollars of this amount was paid in cash, and Houston gave three notes for $2,500 each for the balance of the purchase price. The title in the drilling rig was retained in the seller until the balance of the purchase price should be paid. Hous-

ton made default in the payment of the first note, and Miller lent him $150 to pay the wages of his laborers operating the drilling rig in November, 1923. Miller told the laborers that, if he was in their place, he would work a few days longer, and, if Houston did not pay them, he would quit. He promised them, if Houston moved the rig and rented it, that the money for the rent would have to come through his company, and he would see that Houston paid their wages.

On cross-examination Miller admitted that he knew that the plaintiffs had a right to file a lien against the drilling rig for their labor, but stated that he did not make them any promises to keep them from doing so. He stated further that he thought Houston had a good chance to bring in the well that he was drilling.

The jury returned a verdict for the plaintiffs in the amounts sued for, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.

*C. W. Smith* and *R. H. Little,* for appellant.

*D. D. Glover* and *John L. McClellan,* for appellee.

HART, J., (after stating the facts). If the evidence is in conflict as to whether the promise is independent or collateral, the question is for the jury. *Davis* v. *Patrick,* 141 U. S. 479.

As was said in *Emerson* v. *Slater,* 22 How. (U. S.) 28, "whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability."

Our cases on the subject support this rule. *Grady* v. *Dierks Lumber & Coal Co.,* 154 Ark. 255; *Black Brothers Lumber Co.* v. *Varner,* 164 Ark. 103; and *Moraz* v. *Melton,* 167 Ark. 629.

According to the testimony of B. B. Bradley, H. V. Miller, the agent of the Oil City Iron Works, told the

plaintiffs that, if they would continue on with the work and finish the well, his company would see that they got paid for their labor. This evidence, in the absence of other attending circumstances, would constitute a collateral contract to pay the debts of R. C. Houston, who had originally employed the plaintiffs to drill the well for him. The jury, however, had a right to interpret Miller's promise in the light of the surrounding circumstances and his subsequent admissions, and in that light it cannot be said that the verdict of the jury in favor of the plaintiffs is without legal evidence to support it.

The evidence shows that the Oil City Iron Works had sold to Houston a drilling rig for $12,500. He paid $5,000 in cash and gave three notes for the balance of the purchase money. Houston failed to pay the first note, and Miller gave him further time on it. Houston told Miller that the laborers were about to quit work, and Miller lent him $150 with which to pay their wages. Miller went with Houston and saw him pay this money to the laborers. After the payment was made, Miller gave them the written notice which is incorporated in our statement of facts. He had already told the laborers that, if they would continue the work and finish the well, his company would see that they got paid for their labor. He told them further that Houston owed a balance on the purchase price of the drilling rig, and in substance told them that the payment of the purchase price was to be made out of the profits from drilling the well.

When these facts are to be considered, the jury might have found that the Oil City Iron Works was primarily to be benefited by the work of the plaintiffs in drilling the well, because in that way the debt of Houston for the purchase price of the drilling rig would be paid to the Oil City Iron Works. In other words, the jury might have inferred that the payment by Houston of the balance of the purchase price of the drilling rig, which amounted to $7,500, depended upon the continued and successful drilling of the oil well. The jury might have inferred from this that the promise of Miller in behalf of the Oil City

Iron Works was not one purely collateral, but was made to advance the interest of his company.

Houston was apparently destitute of any other property, and the successful performance by the plaintiffs of their drilling operations would enable the Oil City Iron Works to obtain the balance of the purchase price of the drilling rig. Hence the jury might have found that the agreement of Miller in behalf of his company was not a collateral contract to the obligation of Houston, but that it was an original promise for the pecuniary benefit of the Oil City Iron Works.

It is next insisted that, conceding the promise of Miller to be an original one, it was not within the real or apparent scope of his authority to make it.

We cannot agree with counsel in this contention. According to the testimony of H. V. Miller, the Oil City Iron Works was engaged in the business of manufacturing and selling oil and gas well-drilling rigs, supplies and equipment, and he was agent for the company. He sold the drilling rig in question to Houston for $12,500. He received $5,000 in cash and took three notes for $2,500 each from Houston for the balance of the purchase money. The title to the drilling rig was also retained in the seller until the notes were fully paid. Miller had full authority to sell and collect for the rigs and machinery of the kind sold to R. C. Houston. He had the exclusive management and control in the State of Arkansas of the business of the Oil City Iron Works. Under these circumstances it was at least within the apparent, if not the real, scope of his authority to have made a contract with the plaintiffs to continue drilling the oil well in order that his company might be paid the balance of the purchase money of the drilling outfit.

An agent may testify as to his agency and the extent of the authority with which he was clothed. *Pine Bluff Heading Co. v. Bock,* 163 Ark. 237. As we have just seen, Miller testified that he had the exclusive management and control in the State of Arkansas of the business of the Oil City Iron Works. The general rule is that a principal is

bound by all acts of a general agent which are within the apparent scope of his authority, whether they have been authorized or not. *Security Life Ins. Co. v. Bates,* 144 Ark. 345; *Battle v. Draper,* 149 Ark. 55, and *Bartlett v. Yochum,* 155 Ark. 626.

It follows that the judgment must be affirmed.