Opinion delivered July 14, 1930.

*Frauenthal, Sherrill & Johnson,* for appellant.
*Bridges, McGaughy & Bridges,* for appellee.

MEHAFFY, J. This appeal is prosecuted to reverse a
decree of the Jefferson Chancery Court. The appellant is
a corporation organized for the purpose, among other
things, to purchase and sell cotton and to engage in and
carry on the business of buying and selling cotton. It
had been engaged in the business in Pine Bluff many
years prior to 1925. Charles White was its local manager,
and C. E. Shank was auditor and assistant manager. The
Merchants' & Planters' Bank, the appellee, was engaged
in the banking business and in advancing money to vari-
ous cotton buyers in Pine Bluff. A short time prior to
September 9, 1925, Charles White and C. E. Shank went
to the cashier of the Merchants' & Planters' Bank and
told him that they wanted to move the R. L. Wilkins &
Company cotton account from the Simmons National
Bank to the Merchants' & Planters' Bank, and wanted the

Merchants' & Planters' Bank to pay the checks of R. L. Wilkins & Company, and that the Lesser-Goldman Cotton Company would guarantee the account to them. They told the cashier that Wilkins would buy cotton for them for that year for the Lesser-Goldman Cotton Company, and that the checks in payment of the cotton would be signed R. L. Wilkins & Company, but they would guarantee the payment of the checks. The agreement was verbal. The first money advanced under this agreement to Wilkins & Company was on September 9, 1925. During the year of 1925 the bank advanced as high as $110,000 at one time on this account. From September 9 to December 3, 1925, the bank paid for over thirty lots of cotton ranging in sums from $232.40 to in excess of $10,000. White's signature and Shank's and R. L. Wilkins' were all authorized on the account. So far as the cashier knew, Wilkins bought cotton for the Lesser-Goldman Cotton Company. R. L. Wilkins had been buying cotton for Lesser-Goldman, and the cashier was told that he would buy that year for Lesser-Goldman. All the accounts of R. L. Wilkins & Company were paid by Lesser-Goldman Cotton Company except the amount sued for herein. The cotton, which was purchased and not paid for by the Lesser-Goldman Company, is called the Gocio cotton. The practice was for Wilkins to advise the office of the class of the cotton, and the St. Louis office would then fix the price. As to the Gocio cotton, the St. Louis office fixed a price of 17 cents and Wilkins paid 18 cents, but he testified that he was directed by Shank, who was in charge of the office at Pine Bluff, not to let this cotton get away, but to buy it, and he had to pay 18 cents to get it. Wilkins was at this time, and had been for a long while, buying cotton for Lesser-Goldman Cotton Company on a commission. When Wilkins bought cotton, the Merchants' & Planters' Bank would pay his checks and thereafter the bank would be paid by Lesser-Goldman Cotton Company.

Several witnesses testified, and the evidence is quite lengthy, but the above statement of facts, together with such evidence as may be mentioned in the opinion, will be sufficient without copying all the evidence.

The agreement referred to between the agents of the Lesser-Goldman Cotton Company and the bank was verbal. However, it is contended that, as to every other lot of cotton except the Gocio cotton, there was a letter written by the Lesser-Goldman Cotton Company, and that there was no letter written with this, and appellant's first contention is that there was no proof that appellee had any letter from Lesser-Goldman Cotton Company covering the Gocio cotton.

Jim McLellan, cashier of the bank, testified that to the best of his recollection a letter was given in the Gocio purchase. It is, however, immaterial whether a letter was given with this purchase or not. The Lesser-Goldman Cotton Company was authorized by its charter to engage in the cotton business, and had been engaged in this business in Pine Bluff for many years. Charles White was its local manager at Pine Bluff, and C. E. Shank was auditor and assistant manager. The Merchants' & Planters' Bank was engaged in advancing money to various cotton buyers in Pine Bluff. The cashier of the bank had known the management of the Lesser-Goldman Cotton Company by reputation prior to September 25, 1925. A short time prior to September 9, 1925, Charles White and C. E. Shank went to the bank and told the cashier that they wanted to move the R. L. Wilkins Company account from the Simmons National Bank to the Merchants' & Planters' Bank. They wanted the bank to pay the checks of R. L. Wilkins & Company, and they stated that the Lesser-Goldman Cotton Company would guarantee the account. White and Shank told the cashier that Wilkins would buy cotton for them that year for the Lesser-Goldman Cotton Company. During the year large amounts had been advanced by the bank, and the

bank was afterwards paid by the Lesser-Goldman Cotton Company. The first advance was made September 9, and the last December 3, 1925.

It is contended by appellant that, because there was no letter with this purchase, the Lesser-Goldman Cotton Company was not liable because it was an attempt to charge the appellant upon a specific promise to pay the debt of another, and that, unless there was an agreement in writing, this promise under the statute of frauds was not binding. We do not agree with appellant in this contention. In the first place, the purpose of the provision in the statute of frauds forbidding the bringing of any action to charge any person upon any specific promise to answer for the debt, default or miscarriage of another was not to effectuate a fraud or wrong but its purpose was to prevent fraud. It has never been held to apply to promises in respect to debts created at the instance and for the benefit of the promisor, but only to those by which the debt of one party is sought to be charged upon and collected from another. In the instant case, this was not a promise to pay the debt of another, was not a guarantee to pay the debt of another, it was a promise of appellant to pay its own debt created by its agent that it had at least clothed with apparent authority to make the contract. The business of the Lesser-Goldman Cotton Company was to buy and sell cotton. The agents in charge of its business at Pine Bluff stated to the bank that Wilkins was buying cotton that year for the Lesser-Goldman Cotton Company. The only way Lesser-Goldman Cotton Company could buy cotton was through an agent. Therefore, when this arrangement was made with the bank, it was an agreement to pay the checks drawn by appellant's agent for cotton purchased for appellant, and the statute of frauds has no application. *Davis* v. *Patrick*, 141 U. S. 479, 12 S. Ct. 58. This arrangement was made with the bank in the interest and for the benefit of the Lesser-Goldman Cotton Company through appellant's agent. 27 C. J., p. 136; *Robinson &*

*Son Contracting Co.* v. *Twin City Bank,* 103 Ark. 219, 146 S. W. 523; *United Walnut Co.* v. *Courtney,* 96 Ark. 46, 130 S. W. 566, Ann. Cas. 1912B, 443; *Brown* v. *Morrow,* 124 Ark. 480, 187 S. W. 449; *Hinson* v. *Gillespie,* 131 Ark. 240, 199 S. W. 97; *Colbath* v. *E. D. Clark Seed Co.,* 112 Me. 277, 91 Atl. 1007; *Kelly Handle Co.* v. *Crawford Plumbing & Mill Supply Co.,* 171 N. C. 495, 88 S. E. 514; *Cascaden* v. *Bell,* 257 Fed. 926; *Cincinnati Traction Co.* v. *Cole,* 258 Fed. 169.

It is said, however, that White and Shank did not have authority to borrow money or guarantee the accounts of others. It is conceded that they did have authority to buy cotton for Lesser-Goldman Cotton Company; they had been doing this for years, and the Lesser-Goldman Cotton Company had been paying the accounts, and there is no question in this case of guaranteeing the accounts of others. It is merely a question of paying for the cotton bought for the appellant by its agent, and therefore the question of *ultra vires* argued by appellant has no application here. We therefore conclude that the Lesser-Goldman Cotton Company was liable for the accounts made because of the purchase of cotton by its agent, whether there was any letter written or not.

Appellant also contends that it was unlawful to charge it with 8 per cent. interest compounded monthly, and in this contention we agree with appellant. Mr. H. M. Bennett, a witness for appellant, testified with reference to the account that, ignoring the credit balance of November 23, and taking the two lots of cotton account and figuring the interest at 8 per cent. per annum, there would be a balance due the bank of $879.67 as of October 6, 1927. This calculation by Mr. Bennett appears to us to be correct, and the appellee is entitled to recover $879.67 with interest from October 6, 1927, at 6 per cent. per annum. The decree of the chancery court is therefore modified and a decree entered here for $879.67 with interest from October 6, 1927. It is so ordered.