LOUISIANA OIL REFINING CORPORATION *v.* SCROGGINS.

4-3547

Opinion delivered October 8, 1934.

*Ingram & Moher* and *Buzbee, Harrison, Buzbee & Wright,* for appellant.

*M. F. Elms,* for appellee.

BUTLER, J. This suit was begun in the justice of peace court on the account and affidavit filed by Everett Scroggins for balance of wages alleged to be due him by the Louisiana Oil Refining Corporation. A written answer was filed to the affidavit in which the corporation denied that it was indebted in the sum claimed or in any sum, or that the plaintiff was ever employed by it. The

answer averred that the plaintiff was employed as a truck driver by one A. R. McKewen, that the corporation was not a party to this contract of employment, and that plaintiff had never performed any services for it.

The case was tried anew in the circuit court on appeal from the judgment rendered in the justice court, which trial resulted in a verdict and judgment in favor of the plaintiff. From that judgment is this appeal.

The amount sued for is not in dispute, but on the trial of the case it developed that the plaintiff based his right to recover from the defendant corporation on two propositions; first, that he was an employee of the corporation and that the amount claimed was for unpaid wages, and, second, that if he was not an employee of the corporation, but in fact the employee of McKewen, the defendant was nevertheless liable because it had agreed to pay for the services then rendered and to be rendered by plaintiff. The defense interposed was, as stated in the answer filed in the justice court, a denial that plaintiff was an employee of the defendant and that defendant was not bound by any promise to pay the debt because its agent who made the alleged promise had no authority to act for and bind the defendant in that regard, and that, even though the agent might have had such authority, the oral agreement was void and in violation of the statute of frauds.

On the evidence adduced, these issues were submitted to the jury on instructions, the correctness of which is not challenged, but we are asked to reverse the judgment and dismiss the case on the ground that the court erred in failing to direct a verdict for the defendant at its request. The contention is that, if an agreement was made by a representative of the appellant to pay the salary due appellee or to thereafter become due, such agreement was required to be in writing by the statute of frauds, and, being oral, is void; that the evidence fails to show that there was in fact any such promise.

Appellant relies on § 4862, Crawford & Moses' Digest, which provides that no action shall be brought to charge any person upon any special promise to answer for the debt of another unless the agreement or prom-

ise shall be made in writing, and signed by the party to be charged or some person authorized by him. *Zimmerman* v. *Holt,* 102 Ark. 407, 144 S. W. 222; *Patten* v. *Robbs,* 175 Ark. 784, 300 S. W. 388. The rule announced in these cases is not different from that early announced by this court in *Kurtz* v. *Adams,* 12 Ark. 174, which rule has been consistently followed in subsequent cases. *Chapline* v. *Atkinson,* 45 Ark. 67; *Gale* v. *Harp,* 64 Ark. 462, 43 S. W. 144; *Jonesboro Hdw. Co.* v. *Western Tie Co.,* 134 Ark. 543, 204 S. W. 418; *Becker, etc., Co.* v. *Parker Hdw. Co.,* 146 Ark. 539, 226 S. W. 177; *Oil City Iron Works* v. *Bradley,* 171 Ark. 45, 283 S. W. 362; *Lesser-Goldman Cotton Co.* v. *Merchants' & Planters' Bank,* 182 Ark. 150, 30 S. W. (2d) 215. The principle announced in those cases may be thus stated: Where there is a primary debt which has been antecedently contracted, the promise to pay such debt is original when based on a new consideration moving to the promisor and beneficial to him. When such is the case, the promisor comes under an independent duty of payment, irrespective of the liability of the principal debtor. This rule has been applied in a case where one agreed, in consideration of work to be done, for another to pay the promisee what was then due under her employment by the person for whom she had been working and she accepted the promisor as her debtor. *Jewett* v. *Warriner,* 237 Mass. 36, 129 N. E. 296. The rule has also been applied in a case where the defendant, being interested in effecting the consolidation of two newspapers, verbally agreed to pay indebtedness for printing done by the plaintiff for one of the papers as well as future indebtedness if plaintiff continued printing. *Washington Printing Co.* v. *Osner,* 99 Wash. 537, 169 Pac. 988.

In *Oil City Iron Works* v. *Bradley, supra,* the plaintiffs were employed by R. C. Houston to drill an oil well. Houston fell behind in the payment of their wages and plaintiffs notified him that they were going to quit work. An agent of the iron works told them that said works had sold Houston the drilling rig for which he owed a balance on the purchase price, and that; if they would continue work and finish the well, the Iron Works would

see that they were paid for their labor. It was contended, in a suit brought by plaintiffs against the Iron Works, that the promise, being to pay the debt of another and verbal, was void under the statute of frauds. The court held that these facts were sufficient to take the promise from within the inhibition of the statute, and warranted the jury in finding that the Iron Works was primarily to be benefited by plaintiffs' continuing in the work of drilling the well and brought the case within the principles laid down in the decisions heretofore cited.

In the case at bar, there was testimony to the effect that McKewen was the general agent of the corporation which was engaged in selling its products, consisting of gasoline, motor oil, etc., in the city of Stuttgart. The corporation owned the station and retained title to all products handled by it until sold and delivered. For his services in the general supervision of the work, McKewen was to receive a certain commission out of which he was to pay his helpers. Scroggins, one of the helpers, was an experienced salesman and not only drove the truck which delivered the oil and gasoline, but it was also his duty to make sales of such products on a credit or for cash and to collect therefor. He had been engaged in that service at Stuttgart for two years or more. When sales were made on credit, he would deliver the invoice of the corporation, and, when collections were made, he would take checks made payable to the corporation and deliver them to McKewen. McKewen would indorse the name of the corporation upon these checks and deliver them to the bank. Through a period of time McKewen had been falling behind in paying his employees, and was due Scroggins and another employee a considerable sum for past-due wages. Conditions became such that these two visited the division manager of the corporation at his office in Little Rock, who, after some conversations, the details of which are not given in the testimony, agreed that, if they would continue to work, he would see that they were paid. He told them not to take any action until the Monday following when the matter would be straightened out. On that day an auditor of the corporation

went to Stuttgart and took up the matter of adjustment of the balances due the employees and found the sum of $158.05 due them. He told them to "go on back to work, and everything would be fixed up all right." They continued to work until McKewen was let out by the corporation and a temporary agent was installed in his place, under whom they continued to work for a time.

Under the circumstances surrounding this transaction, there are sufficient facts to justify a finding that it was to the interest of the corporation for Scroggins to continue selling the products of the corporation and to collect therefor, for by this the corporation would be directly benefited, and the promise therefore not void as a collateral undertaking but enforceable as a primary obligation.

It is next argued by appellant that there was no testimony to the effect that appellant ever agreed to pay the back salary of the appellee Scroggins, or any future salary he might earn. In order to constitute a promise, no specific words are required. It is merely a declaration of an intention to do or to forbear from doing at the request of, or for the use of, another, and may be inferred without the use of the word "promise." The particular language which was used by the agent as an inducement for Scroggins to return to work is that "he would see they got their money." One of the principal definitions of the word "see" is "to bring about—to effect," and in ordinary conversation it is used as an equivalent of the word "guarantee." In this sense it was used by the agent of the Oil City Iron Works (*Oil City Iron Works* v. *Bradley, supra*) when he told the plaintiffs that the Iron Works "would see they got paid for their labor."

In *Housely* v. *Strawn Merc. Co.,* (Tex. Civ. App.) 291 S. W. 864, and in *Lesser-Goldman Cotton Co.* v. *Merchants' & Planters' Bank, supra,* it was held that an oral promise to "guarantee" was equivalent to a promise to pay a debt. Our conclusion is that there was sufficient evidence to establish a promise on the part of the agent of the corporation to pay Scroggins his wages, and that under the authority of the cases cited there was a suffi-

cient consideration for the promise to bring it from within the inhibition of the statute.

The judgment of the trial court will therefore be affirmed.