CATES *v.* ROGERS.

4-4626

Opinion delivered April 26, 1937.

*Harrison, Smith & Taylor,* for appellant.
*Shane & Fendler,* for appellees.

SMITH, J. The question presented on this appeal is that of the sufficiency of the testimony to support the verdict of the jury, upon which judgment was rendered against appellant, upon a special promise, by her as administratrix of the estate of J. E. Bell, her deceased husband, to answer for a debt of the deceased out of her own estate. The defenses of the statutes of frauds and of limitations were pleaded, but are not insisted upon here for reasons which appear in the statement of facts.

Appellees, Ralph V. and Lawrence M. Rogers, are the sons of Mrs. E. L. Rogers, who was a widow at the time of her death in 1920. She left a life insurance policy for $2,000, which, before her death, she made payable to her brother, J. E. Bell, as trustee for her children, who were then eight and seven years old, respectively. It was expressly agreed that Mr. Bell should use this money as he pleased, and should account therefor to his nephews, with interest at six per cent., when they reached the age of twenty-one years. These facts are undisputed, indeed, they are admitted to be true. Mr. Bell died in 1929. He appears to have left valuable property, which was heavily encumbered. He left a ten-thousand-dollar life insurance policy, which was payable to and has been collected by

appellant, his widow. The boys were seventeen and sixteen years of age at the time of their uncle's death.

The elder boy decided to go to school, and wrote appellant for an advance of money for that purpose. John W. Howell was at that time the guardian of the boys. He was 87 or 88 years old, and died in 1931. The boys testified that since they were 17 and 16, respectively, they, as they expressed it, were "on their own," and managed their own affairs. The boys were residents of Missouri, and consulted Fry & Hollingsworth, a firm of attorneys practicing law in that state, in regard to the collection of this money. At their suggestion the lawyers wrote Mrs. Bell, who has since married a man named Cates. According to their testimony, Mrs. Cates answered admitting the liability of Mr. Bell's estate, in which reply she promised to make payments as the necessities of the boys required and her ability permitted. They received other letters to the same effect, which were delivered to Mr. Howell, their guardian, which they had been unable to find since Mr. Howell's death.

Their attorneys, Fry & Hollingsworth, corresponded with Judge V. G. Holland, the attorney representing Mrs. Cates as administratrix of the estate of her deceased husband, Bell. Judge Holland testified in the case with the utmost candor. There appears to have been no question about the liability of Mr. Bell's estate. The question considered appeared to have been whether the demand could be allowed as a preferred claim in the probate court or whether suit should be brought in the chancery court to establish a trust. The boys testified that these negotiations were consummated by a letter received from Mrs. Cates, in which she advised that she was having great trouble with the administration of the estate on account of the number and character of the demands which had been filed against it, one of these being for $8,000 as a stockholder's liability in an insolvent bank. Mrs. Cates wrote proposing that the claim be filed as a common claim and that it be probated as such, and, if so, that she would personally pay any deficiency. This letter was satisfactory to the boys, and they personally paid their attorneys

a fee of $50 which was charged to them, and they assumed that the matter had been settled. This letter was delivered to the guardian; and has been lost along with certain other letters received from Mrs. Cates.

The voluminous record before us relates largely to these letters, and this opinion would be of undue length if the conflicting testimony regarding them was reviewed. Mrs. Cates denied writing any such letters. That such letters were written is very clearly established by the testimony of Mrs. Maude A. Shobe, if her testimony is to be believed. Her credibility was, of course, a question for the jury. Mrs. Shobe was a sister of J. E. Bell.

It is argued that such contradictions appear in her testimony as to render it unworthy of belief. But this, too, was a question for the jury. The principal contradiction appearing in the testimony of Mrs. Shobe relates to the time when the beneficiary named in the policy on the life of Mrs. Rogers was changed and the policy made payable to her brother, Mr. Bell. She testified that this was done just before Mrs. Rogers' death in 1920, whereas the beneficiary was changed in 1917. She testified that after the beneficiary was changed in the policy, Mr. Bell, her brother, stated to his wife, in the presence of herself and of witnesses, that he would use the boys' money until they were of age, and that should he die before that time he wanted his wife to be certain to see that the boys got their money; and Mrs. Bell promised this would be done.

Mrs. Shobe testified that she saw and read letters constituting an agreement on Mrs. Cates' part to personally pay the boys the trust money due them by her husband; indeed, she testified as to the receipt of such a letter herself from Mrs. Cates. Mrs. Cates wrote that letter to Mrs. Shobe inclosing a check for $200 payable to the boys jointly, and explained that she had done so because the boys were off at school and she did not know their address. Mrs. Cates was then residing in Blytheville, Arkansas.

Mrs. Cates resigned as administratrix of the estate of her deceased husband, and became the purchaser of certain of his lands at an administrator's sale. She

bought certain other lands from the purchaser at that sale.

More significant and convincing than this testimony is the admission of Mrs. Cates that she actually paid the boys $1,300. They testified that they were paid $1,400 by her. The payments totaling this amount were extended over a period of several years. It is not clear from Mrs. Cates' testimony whether she regarded these remittances as mere gifts, or in a discharge of a moral—and not a legal—obligation.

Letters accompanying these remittances were offered in evidence. The last remittance was made September 12, 1932. Suit was brought September 11, 1935.

This payment under the verdict of the jury eliminates the question of the statutes of limitations. No payments were made after Mr. Cates married Mrs. Bell. The express promise in writing of Mrs. Cates to pay any deficiency remaining after the claim had been prorated with other fourth class demands eliminates, under the verdict of the jury, the question of the statute of frauds. The testimony supports the finding of the jury that pursuant to this arrangement the claim was presented, allowed and classed as a fourth class claim in an amount not disputed by the administratrix.

Certain other letters, the authorship of which Mrs. Cates admitted, were offered in evidence, which confirm our conclusion that the testimony is legally sufficient to support the verdict. In these letters Mrs. Cates admits her obligation and expressed regret at her inability to discharge it more expeditiously. In a letter dated November 18, 1930, addressed to the boys jointly, she stated: "I still owe you a thousand dollars. * * *" They construed this letter as meaning that she owed each of them a thousand dollars, and they replied that even that amount was not correct, as she was then indebted to each of them, including interest, in the sum of twelve hundred dollars. The following November she remitted the boys jointly $500 in a letter which again stated: "I still owe you a thousand dollars."

The court told the jury there was no controversy as to the balance due if Mrs. Cates were liable at all, and no exception was saved to that instruction. There was no controversy as to the amount of insurance that Mr. Bell had received or as to the time it was paid him. Nor is there any controversy as to the payments made by Mrs. Cates, indeed, the boys credit her with a hundred dollars more than she claims to have paid.

No question is made as to the validity of the consideration supporting Mrs. Cates' promise to pay if the demand were not pressed except as a fourth class claim against the estate, the insistence being that no such promise was made. It is unnecessary to determine what relief might otherwise have been obtained, either in the probate court or in the chancery court. The testimony of Judge Holland shows that the respective attorneys were in some doubt upon that question. Mrs. Cates appears to have been the chief beneficiary of the administration of her husband's estate, and was anxious to close the administration expeditiously and without unnecessary complications. Forbearance to institute legal proceedings on an asserted claim is sufficient consideration to support a new obligation and an agreement for the compromise of a disputed claim, even though it later appears to have been without merit; it, also, constitutes a sufficient consideration for a new promise. *Hays* v. *McGuirt,* 186 Ark. 702, 55 S. W. (2d) 76; *Louisiana Oil Refining Corporation* v. *Scroggins,* 189 Ark. 707, 74 S. W. (2d) 971.

The case last cited is to the effect that such a promise need not even be in writing, and it may even be for the payment of the debt of another. It appears, however, from the facts stated, that the jury was warranted in finding that there was such a promise, and that it was evidenced by several writings signed by Mrs. Cates, the party sought to be charged. The right to enforce this agreement could not be defeated by showing that the rights waived by appellees would have been profitless had they been pursued.

The judgment appears to be correct, and it is, therefore, affirmed.